**MIDDLESBORO LIQUOR & WINE CO.,
Inc., v. BERKSHIRE.**

No. 8020.

United States Court of Appeals for the
District of Columbia.

Decided Dec. 28, 1942.

Mr. Albert A. Jones, of Washington, D. C., for appellant.

Mr. Irvin L. Stephenson, Sp. Asst. to Atty. Gen., pro hac vice by special designation of the Atty. Gen., with whom Thurman W. Arnold, Asst. Atty. Gen., and Messrs. Herbert Borkland, Sp. Asst. to Atty. Gen., pro hac vice by special designation of the Atty. Gen., and Robert L. Pierce, Sp. Atty., Department of Justice, of Washington, D. C., were on the brief for appellee.

Mr. Wilber Stammler, of Washington, D. C., entered an appearance for the appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

MILLER, Associate Justice.

On July 14, 1937, following an investigation and hearing, a Wholesaler's Basic Permit was issued to appellant, to engage in the business of selling wine and distilled spirits.[1] On June 26, 1941, the permit was annulled, and the order of annulment was affirmed on August 16, 1941. This appeal followed.[2]

The validity of the challenged order depends upon the following statutory language:[3] "A basic permit shall by order of the Secretary of the Treasury, after due notice and opportunity for hearing to the permittee, * * * (3) be annulled if the Secretary finds that the permit was procured through fraud, or misrepresentation, or concealment of material fact. The order shall state the findings which are the basis for the order." The pertinent finding, as set out in the order, reads as follows: "(2) That Wholesaler's Basic Permit No. PDW-9867 was procured by Respondent from said Administrator through fraud and concealment and misrepresentation of material fact, in that Respondent willfully concealed and misrepresented the true interest therein of Floyd Ball, thereby preventing the Administrator from considering facts in connection with Floyd Ball's past record of criminal activities, known to both parties, and which facts, had they been considered by the Administrator, properly could have resulted in a determination by him that Respondent was not entitled to a basic permit under the Federal Alcohol Administration Act, as it was not likely to maintain operations in conformity with Federal law by reason of Floyd Ball's interest therein; * * *"

The first question to be determined is whether this finding is supported by substantial evidence. If so it is conclusive[4] and we must affirm the order.[5] The record leaves no doubt as to the proper answer. It shows, first, that on February 7, 1936, when appellant filed its application for a permit, Floyd Ball was a principal stockholder of appellant, a member of its Board of Directors and its Secretary-Treasurer. He signed and executed the application for the permit; in fact, his was the only name of an individual person which appeared upon the application. Prior to the incorporation of appellant, he had been the active member of the original partnership and owner of a one-half interest therein. Second, the record shows that when, following filing of the application for a permit, an investigation was begun which threatened to reveal Floyd Ball's record and prevent issuance of the permit, he purported to divest himself of all interest in the company and resigned his office as Secretary-Treasurer therein. At the hearing upon the application, testimony was given to that effect by appellant's President and by its attorney. In the findings and recommendations of the hearing officer, filed following the hearing upon the application, he stated explicitly: "The evidence further shows that Floyd Ball is not now connected with the company *in any capacity.*" [Italics supplied] It was upon the basis of these findings and recommendations that the permit was issued. Third, the record shows that after the permit was granted, it became apparent that Floyd Ball had not divested himself of all interest in the company; that the representation to that effect, made

---

[1] 49 Stat. 978, 27 U.S.C.A. § 204.

[2] 49 Stat. 980, 27 U.S.C.A. § 204(h).

[3] 49 Stat. 979, 27 U.S.C.A. § 204(e).

[4] 49 Stat. 980, 27 U.S.C.A. § 204(h).

[5] Arrow Distilleries, Inc., v. Alexander, 7 Cir., 109 F.2d 397, 403, certiorari denied 310 U.S. 646, 60 S.Ct. 1095, 84 L. Ed. 1412; Atlanta Beer Distributing Co., Inc., v. Alexander, 5 Cir., 93 F.2d 11, 12, certiorari denied 303 U.S. 644, 58 S.Ct. 645, 82 L.Ed. 1106.

at the hearing upon the application, was a fraudulent misrepresentation, and the purported withdrawal from the position of Secretary-Treasurer was a subterfuge used to mislead the government and to secure the issuance of a permit, which it was feared would, otherwise, have been denied. The record discloses the substantial evidence required to support the government's determination that the permit should be annulled. The purpose of the law is clearly revealed by its prohibition against the issuance of permits to persons who are not likely to carry on the business for which the permit is issued "in conformity with Federal law;"[6] and by its further provision for annulment, under which the challenged order in the present case was issued.

Appellant contends that the proceeding in the present case was barred by the limitations of Section 4(i) of the Act.[7] However, those limitations have no relation to annulment proceedings. They are specifically confined to proceedings for suspension or revocation. This is even more clearly shown by reference to Section 4(e) in which the three distinct types of disciplinary action are enumerated and defined. An entirely different situation exists when it appears that a permit has been procured by fraud, misrepresentation or concealment than when a permit has been properly procured but has been improperly used. Proceedings to suspend or revoke are concerned with nonuser or misuser after the granting of the permit. Proceedings to annul are concerned with fraudulent impositions upon the government and concealment of material facts prior to the granting of permits, which render them void ab initio. Section 4(i) is concerned with limitations upon proceedings for suspension or revocation "for violation of any condition thereof." Fraud in procuring the issuance of a permit precedes the granting of the permit itself, and a proceeding to annul it upon that ground has nothing to do with violation of its conditions. There is no limitation upon a proceeding to annul because of fraudulent procurement of a permit.

The law requires full disclosure and good faith on the part of applicants for such privileges as are here involved.[8] Even if we were to assume neglect of duty or misfeasance in the original action granting the permit, the government could not be estopped to review the action upon the discovery of fraud, misrepresentation and concealment. The United States, acting in its governmental capacity, cannot be estopped by unsanctioned acts of its agents.[9] As we recently said in an analogous situation: "No doubt appellee's predecessors acted from the best of motives, but they misunderstood and violated the statute. Appellee should not be required to repeat their illegal acts. * * * this appellant may not invoke an estoppel to obtain a license which the statute forbids. It has no 'legal right' to a license. * * * It would be exceedingly prejudicial to the public interest to permit appellant to carry on * * * business without the safeguards which the statute requires."[10] In the present case we have no reason to assume that had the Administra-

---

[6] 49 Stat. 979, 27 U.S.C.A. § 204(a) (2). See Atlanta Beer Distributing Co., Inc., v. Alexander, 5 Cir., 93 F.2d 11, 13, certiorari denied 303 U.S. 644, 58 S.Ct. 645, 82 L.Ed. 1106.

[7] 49 Stat. 980, 27 U.S.C.A. § 204(i).

[8] See United States v. De Francis, 60 App.D.C. 207, 208, 50 F.2d 497, 498 (cancellation of naturalization certificate); Schneiderman v. United States, 9 Cir., 119 F.2d 500, 503, certiorari granted 314 U.S. 597, 62 S.Ct. 98, 86 L.Ed. 481 (cancellation of naturalization certificate); People v. Pettit, 128 App.Div. 870, 113 N.Y.S. 243, 245 (cancellation of liquor tax certificate); Great Western Broadcasting Ass'n, Inc., v. Federal Communications Commission, 68 App.D.C. 119, 121, 94 F.2d 244, 246 (radio broadcasting license); United States v. Southern Pacific Co., 251 U.S. 1, 12, 40 S.Ct. 47, 64 L.Ed. 97 (cancellation of land patent); Oklahoma-Texas Trust v. Securities and Exchange Commission, 10 Cir., 100 F. 2d 888, 891, 892 (SEC stop order because of false registration statement).

[9] Utah Power & Light Co. v. United States, 243 U.S. 389, 408, 409, 37 S.Ct. 387, 61 L.Ed. 791; Cummings v. Societe Suisse Pour Valeurs de Metaux, 66 App. D.C. 121, 123, 85 F.2d 287, 289, certiorari denied Societe Suisse Pour Valeurs de Metaux v. Murphy, 306 U.S. 631, 59 S.Ct. 463, 83 L.Ed. 1033; United States v. Stewart, 9 Cir., 121 F.2d 705, 713, reversed on other grounds 316 U.S. 354, 62 S.Ct. 1154, 86 L.Ed. 1529. And see United States v. Ginsberg, 243 U.S. 472, 473, 475, 37 S.Ct. 422, 61 L.Ed. 853.

[10] National Hospital Serv. Soc., Inc., v. Jordan, U.S.App.D.C., 128 F.2d 460.

tor been fully informed, he would have failed to deny the original application. He is entitled to the presumption of regularity in official action. [11]

We have examined appellant's other contentions and find them equally without merit.

Affirmed.

---

[11] Lucking v. Delano, 74 App.D.C. 134, 142, 122 F.2d 21, 29, and cases there cited; Dunn v. Ickes, 72 App.D.C. 325, 326, 115 F.2d 36, 37, certiorari denied 311 U.S. 698, 61 S.Ct. 137, 85 L.Ed. 452.