LEVERS v. BERKSHIRE, Deputy Com'r
of Internal Revenue.

No. 3141.

Circuit Court of Appeals, Tenth Circuit.

Nov. 2, 1945.

Lake J. Frazier, of Roswell, N. M., for petitioner.

Arthur A. Alexander, of Washington, D. C., for respondent.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

This appeal is prosecuted under the provisions of subsection 4(h) of the Federal Alcohol Administration Act, 49 Stat. 977, 27 U.S.C.A. § 201 et seq., to review the action of the Deputy Commissioner of Internal Revenue in Charge of Alcohol Tax Unit, denying the application of Ervin Joe Levers for a basic permit to engage in the wholesale liquor business at Roswell, New Mexico.

The application, dated May 20, 1944, filed with the Supervisor of District No. 13, Alcohol Tax Unit, was signed "Levers Wholesale Distributor, Ervin J. Levers, individual, by Lake J. Frazier, Attorney in Fact." Frazier was acting pursuant to a power of attorney executed by petitioner, who was at that time overseas in military service. On September 14, 1944, the Supervisor gave notice of contemplated denial, and a hearing was subsequently had on the matter in Albuquerque, New Mexico, before a Hearing Officer of the Alcohol Tax Unit. Petitioner has appealed from the final order sustaining the action of the Supervisor.

Section 4(a) (2) of the Act pertinently provides that any person is entitled to a wholesale basic permit, unless the Administrator finds inter alia that the applicant, by reason of his business experience, financial standing, or trade connections, is not likely to commence operations within a reasonable period, or to maintain such operations in conformity with Federal law. Insofar as it is material to this case, Section 5(a) (b) of the Act makes it unlawful for any wholesaler of distilled spirits to own any interest in, make any concession or contributions to, or exercise any control whatsoever over a retailer of distilled spirits, if such relationship substantially restrains or prevents transactions in interstate commerce in such products, or if the direct effect is to prevent, deter, hinder or restrict the sale of any such products to any retailer in interstate commerce.

The required statement filed in support of the application represented, among other things, that applicant is an individual and would operate under a trade name; that he owned his place of business; that funds necessary to carry on the business were his individual funds then on deposit with the First National Bank of Roswell, New Mexico, and that arrangements had been made with said Bank for any additional funds needed to carry on the proposed business. That he thoroughly understood the liquor business, having worked for Levers Bros. Wholesale Dealers, a partnership owned by his father and uncle, while attending school at New Mexico Military Institute, and until he entered the army in 1941; that several named manufacturers of distilled spirits and malt beverages had designated him as their distributing agent in that territory; and that he was not controlled by any corporation, legal or otherwise, nor any person in any manner.

The notice of contemplated denial recited that the District Supervisor had reason to believe that the applicant was not entitled to the permit, primarily because under the proposed plan, the actual management of the business would be through a person who also held a power of attorney to manage and operate several retail liquor businesses in and near Roswell; that the applicant was not the real party in interest, and would not control and manage the business, but in reality it would be owned, managed and controlled by the father of applicant who is not lawfully entitled to the permit, consequently applicant's financial standing and trade connections were such that he was not likely to operate the business in conformity with applicable Federal law, and particularly Section 5(a) (b) of the Act. It was also recited that applicant misrepresented and concealed material facts in his sworn statement accompanying the application.

From the record, comprising investigations conducted by the Alcohol Tax Unit and testimony adduced at the Hearing, it appears that applicant, who is 24 years of age, was an engineering student at a military school in Roswell when he entered the armed services approximately four years ago. On April 6, 1944, while applicant was overseas, the wholesalers basic permit held by his father was cancelled, and at the request of W. L. Lile, an employee of petitioner's father, Lake J. Frazier accepted a power of attorney from

petitioner, and thereupon made this application for the permit. Frazier testified that he aided in the legal affairs, and that he understood that Lile was to manage the business until petitioner returned. Before petitioner went overseas, he executed a general power of attorney in favor of his father, and although it was used for other purposes, it was not used in making application for this permit. In an interview with Alcohol Tax Unit agents, the father stated that he was taking no part in his son's proposed business.

The evidence disclosed a balance of $448.37 in the petitioner's account with the First National Bank of Roswell on April 29, 1944, on which both petitioner and his sister were authorized to draw; and that on May 27, 1944, a cashier's check in the sum of $3200, purchased by the father in Chicago for cash, was deposited to the credit of that account. Petitioner also had a savings account in the sum of $3407.62 with the same Bank, representing his overseas allotment, and $60.00 per month from his father for rent on a building, which the father had deeded to him in 1943. During this rental period, the father had used this building as a warehouse, and the son proposed to locate his business in it if the basic permit was granted. In connection with the application, a letter from the Bank was submitted establishing a line of credit from $10,000 to $15,000, and also letters from three manufacturers of distilled products stating that their lines of merchandise would be available for petitioner when the business was commenced. These companies formerly sold their products to Levers Bros., of which petitioner's father was a partner. The father for many years has had a substantial line of credit with the First National Bank of Roswell, however an officer of the Bank stated that there was no additional security for the line of credit other than petitioner's note.

Petitioner, who arrived from overseas shortly before the hearing, stated that Mr. Alexander Berry, a former cafe owner and customer of his father, would manage the business during his absence, and that neither his father nor Lile would have any connection with it. He proposed to have two boys, then serving with him in the army, work for him; that he contemplated marriage and wished to be established in business when released from the service.

At this point counsel for the Government suggested that since the petitioner was in military service, it would probably be two years or longer before he could personally operate the business. In response to questions of the Hearing Officer, he stated that when, after returning from overseas, he learned of Lile's connection with retail outlets, he promptly revoked all outstanding powers of attorney to his father, Lile and Frazier. He further stated that he had never asked his father for funds or advice concerning the business, and had no knowledge of his father's difficulty concerning his basic permit when he decided to go into business, notwithstanding evidence of an extensive correspondence between them.

From this evidence and reports of Alcohol Tax Unit investigators, the Hearing Officer found that the applicant had no real experience in the liquor or any other business, and no assurance of being released from military service to enter into the business within a reasonable time; that Lile, as confidential employee of Levers Bros., and manager of a string of retail liquor stores, would control the proposed business. It was pointed out that the only qualifications of Berry, whom applicant designated to manage the business, was as a former cafe operator, retail liquor dealer, and customer of Levers Bros., and that there was nothing to show that the Bank had acquiesced in this particular managerial arrangement. The Hearing Officer emphasized the fact that the funds to be used in the proposed business consisted of a savings account of $3407.62, and a checking account of $4088.00, of which the father had furnished $3200 as a gift, and that a line of credit at the First National Bank had been arranged by a confidential employee of the father. In the light of these facts, the Officer found that the statements in the application to the effect that applicant was to be the sole owner of the business, and the funds to be used were his individual funds on deposit with the Bank, or to be secured on a line of credit established with the Bank on his own account, were misrepresentations and concealments of the actual facts. Viewing the whole record, the Officer found that the proposed "business was to be controlled, managed, and operated by Forest E. Levers [applicant's father], either as a substitute for Levers Bros., or in connection therewith."

The District Supervisor approved these findings, and accordingly denied the permit. On application for reconsideration, the Supervisor again denied the application on the grounds that the applicant, by reason of his business experience, financial standing or trade connections, was not likely to commence operations within a reasonable period, or to maintain such operations in conformity with Federal law within the meaning of Section 4(a) (2) of the Federal Alcohol Administration Act. On petition for administrative review to the respondent, it was found upon examination and consideration of the record, that the findings and orders of the District Supervisor "were supported by substantial evidence in the record," and the application was accordingly finally denied.

The appeal to this Court, as blueprinted by the objections urged to the Administrator, challenges the lawfulness of the final order of denial, on the broad and general grounds that the petitioner was denied a fair and impartial hearing in the administrative proceedings. Particularly, it is contended that the Supervisor erroneously and contrary to law, shifted and enlarged the grounds of his contemplated denial by including in the final order a finding to the effect that by reason of his military service, there was no assurance that he could enter into the proposed business within a reasonable time.

█ It is true that this particular reason was not assigned in the contemplated denial, but it was specifically mentioned and assigned as grounds for denial by the Hearing Officer in his findings; by the Supervisor in his original order of denial dated December 7, 1944, and his final order of denial dated February 3, 1945, in which he affirms his previous order substantially in the language of the applicable statute. Sec. 4(a) (b). Insofar as such facts may constitute a valid ground under the statute for denial of a basic permit, we can find nothing in the applicable statutes or regulations which forbids the Hearing Officer or the Supervisor from considering that fact as grounds for denial, although it may not have been specifically mentioned in the notice of contemplated denial. The further contention that the final order of denial was based upon facts not recited in the original order is not supported by the record. But even so, we do not regard that finding as decisive of the validity of the order. If such finding was the only basis upon which this order could be sustained, we should not hesitate to take judicial knowledge of the fact that the War is now over, and that the petitioner will be free to engage in business within a reasonable time.

█ In our view, the validity of this order turns on the question whether the evidence was sufficient to support the administrative findings to the effect that the proposed business would in reality be owned and operated by petitioner's father who, on this record, is not lawfully entitled to a basic permit. Subsection 4(h) of the Act, as amended, 54 Stat. 1232, 5 Fed. Reg. 2108, grants review to this Court from a final order denying a wholesale basic permit, and confers exclusive jurisdiction (subject to review by the Supreme Court), to affirm, modify, or set aside such order in whole or in part. But, the findings of the Supervisor as to the facts, if supported by substantial evidence, are conclusively binding here. The Act embodies a comprehensive scheme for the regulation and administration of the manufacture and sale of intoxicating liquors, and the Administrator is expressly entrusted with the enforcement of the Act. One of the purposes of the Act is to prevent the integration of retail and wholesale outlets, and to that end inter-business relations between the two are expressly prohibited and made unlawful. It is rightly said that we should not substitute our judgment for that of the Administrator, and if supported by substantial evidence, we must affirm the administrative order, provided the Administrator did not proceed upon a mistake of law, refuse to hear relevant evidence, or act arbitrarily and capriciously to the prejudice of the applicant. Atlanta Beer Dist. Co. v. Alexander, 5 Cir., 93 F.2d 11; Owings Mills Dist. v. Helvering, 4 Cir., 124 F.2d 379; Middlesboro Liquor & Wine Co. v. Berkshire, 77 U.S.App.D.C. 88, 133 F.2d 39. When viewed in its totality, and considered in the light of the permissible inferences to be drawn from these facts, we are unable to say that the evidence does not support the ultimate factual conclusions found by the Supervisor to the effect that the son was the alter ego of his father, who by reason of his connections with retail outlets was ineligible for the permit.

In that connection, it is argued that the question of the father's eligibility for the basic permit has not been definitely

decided, but that the question is now involved in an appeal to the Supreme Court from a judgment of this Court, reported in Levers v. Anderson, 147 F.2d 547. But, it is an undisputed fact that the basic permit formerly held by the father has been cancelled, and the appeal now pending involves a new application.

The contention is made that the Hearing Officer erroneously admitted in evidence reports of investigators of the A. T. U., containing factual conclusions which were prejudicial to the petitioner's cause, and arbitrarily rejected testimony tending to show that in addition to gifts by the father to petitioner, he made similar gifts to petitioner's sister, who was not an applicant for a basic permit, and that such evidence was competent to show that the gifts made to petitioner were not evidential manifestations of the father's interest in the proposed business.

Section 4(b) of the Act affords an applicant an opportunity for a hearing upon his application, and provides that if, after notice and opportunity for hearing, the Supervisor finds that the applicant is not entitled to a basic permit under the statute, "he shall by order deny the application stating the findings which are the basis for his order." Beyond this general pattern, the Act does not prescribe the procedural requirements for the statutory hearing. The Act, as amended, does, however, specifically authorize the Federal Alcohol Administration to prescribe necessary rules and regulations for carrying out his powers and duties. Section 502(c), 49 Stat. 1965, 27 U.S.C.A. § 202b. In pursuance of that authority, Section 182.222 of Treas. Regulations 3, Code of Federal Regulations, Book 5, Part 2, Ch. 1, Title 27, Section 182.222, provides that at a hearing on the disapproval of an application, the Supervisor shall incorporate in the record of the proceedings the testimony, reports, affidavits, and other documents upon which he based the disapproval of the application. But the petitioner argues that the admissibility of evidence is governed exclusively by Section 182.250 of the Regulations, which provides in part that "the evidence introduced at the revocation hearing on behalf of the United States or the permittee must consist of affidavits, depositions, duly authenticated copies of records and documents, and oral testimony of witnesses." But the latter section relates to revocation hearings, and does not control the present application proceedings. In any event, technical rules for the exclusion of evidence applicable in jury trials do not apply to proceedings conducted before administrative agencies in the absence of a statutory requirement that such rules are to be observed. Opp Cotton Mills v. Administrator of Wage and Hour Division, 312 U.S. 126, 156, 61 S.Ct. 524, 85 L.Ed. 624. The law makes no such requirements, and we are not authorized to do so.

From a consideration of the whole record, we are unable to say that the petitioner was not afforded the "opportunity for hearing" on his application as contemplated by the Act, and the order is therefore affirmed.