L. E. WHITE, M. Donahue and William L. Talbot, Administrator of Thomas F. Talbot Estate, a Partnership, t/a Humes Distributing Co., Petitioners,

v.

UNITED STATES of America, Respondent.

No. 17281.

United States Court of Appeals
Eighth Circuit.

Jan. 19, 1966.

Robert H. Walker, J. A. Concannon and David B. Hendrickson, of Boyd, Walker & Concannon, Keokuk, Iowa, filed supplemental brief for petitioners.

William H. Orrick, Jr., Asst. Atty. Gen., and Robert B. Hummel and Jerry Z. Pruzansky, Attys., Dept. of Justice, and William Hare, Atty., Alcohol and Tobacco Tax Legal Division, Office of Chief Counsel, I.R.S., Washington, D. C., filed supplemental brief for respondent.

Before JOHNSEN, MATTHES and MEHAFFY, Circuit Judges.

JOHNSEN, Circuit Judge.

This proceeding for review, 27 U.S. C.A. § 204(h), of an order annulling a malt beverage wholesaler's basic permit, § 204(e) (3), issued to an Iowa partnership, has been the subject of a previous opinion by us, 342 F.2d 481.

We there overruled objection by the Secretary of the Treasury to our jurisdiction to review the order, but vacated the submission made on the merits and requested the parties to file supplemental briefs on whether, in light of 27 U.S.C.A. § 204(g), authority could be regarded as conferred by § 204(e) (3) to engage in an annulment proceeding as to a basic permit, where a transfer had occurred of the permittee's business; where control of the business had been taken over by the transferee; where application for a new permit had been made by the transferee within thirty days; and where there had been no final action taken by the Secretary upon such application. 342 F.2d at 485.

From the record which was before us, this appeared to be the situation involved. We recognized the possibility that the record might not have been made to show the real situation in this respect, and so we subjected our request for supplemental briefs to the condition, "if the application for a new permit was here left in the status suggested by the briefs and record * * *". Ibid.

### I.

What we were concerned about was that a stamp of judicial approval be not unadvisedly placed upon an administrative order, if there existed no authority to make the order. Here, § 204(g) purported to allow change in ownership or control of a going wholesale liquor business to occur and not have the continuity of the business disrupted, by a prescription in the statute for the filing of an application by the transferee for a new permit, and by a proviso that "then the outstanding basic permit shall continue in effect until such application is finally acted on by the Secretary of the Treasury".

If there was basis for the Secretary not to regard this as excluding authority in him under § 204(e) (3) to engage in an annulment proceeding and order as to the outstanding basic permit in such a situation, so that he was free to disrupt the continuity of the business

without having disposed of the new application, we were desirous of having this indicated for purpose of satisfying ourselves on the seeming threshhold question.

It now, however, develops that the contingency which we recognized, of the record perhaps not having been made to show the real situation, is the fact, so that it is not necessary for us to consider the question posed as to the Secretary's authority. On the supplementary showing which has been made, the application for a new permit filed by the purported transferee of the business had been withdrawn prior to the completion of and the order in the present annulment proceeding. Another application for a permit had been filed by a corporation as purported transferee of the business, but this did not occur until after the annulment proceeding had been initiated, and in fact after part of the hearing therein had been held. Furthermore, as the parties now advise us, "there was an agreement between the Secretary's attorneys and the attorneys for the petitioners here, and the applicants in the application proceedings," that nothing was to be done by the Secretary as to the application for a new permit, "until a decision had been finally reached in the present action * * *", thus specifically subjecting the pendency of the application to this condition.

The situation thus is a somewhat anomalous one, but it recognizedly had been brought to exist by all the parties capable of being affected. This has perhaps been prompted by the unusual circumstances and relationships underlying the previous operation of the business, as referred to in our consideration, infra, of the Secretary's order.

As noted, our query as to whether there was limitation or exception from § 204(g) upon the Secretary's authority under § 204(e) (3) to engage in the annulment proceeding and order involved is without application to the situation as the facts have now been supplementally made to appear. Withdrawal by the purported partnership-purchaser of its

application for a new permit left the situation the same as though the application had not been filed. With no application pending for a new permit, there could be no question as to the Secretary's right to move forward with an annulment proceeding against the outstanding basic permit. Further, the proceeding would not, we think, except in the Secretary's discretion, be capable of being halted by a transfer of the business thereafter and the filing of an application for a new permit by the purported transferee, in an attempt to preserve the continuity of the business.

■ The general intent of Congress, as referred to in our opinion, 342 F.2d at 485, to allow "control of the permittee" to be acquired and not have the "continuity of operation of the business" be disrupted, cannot in our opinion be regarded as extending to a transferee who undertakes to step into the situation after the Secretary has initiated an annulment proceeding against the outstanding permit. Such an interpretation of the statute would make it open the door to a possible game of successive subsequent transfers and applications for new permits, with a tying of the Secretary's hands against the indefinite continuation of a business as to whose right to operate record-challenge had been made.

On this basis, we are required, apart from the express recognition by everyone capable of being affected, which has here been made, of the Secretary's right to carry through the annulment proceeding to final decision, to pass upon the merits of the Secretary's annulment order.

## II.

■ Engaging in such a review, we must hold that the record provides adequate probative basis for the annulment order, within the ground of the language in § 204(e) (3) "that the permit was procured through * * * misrepresentation, or concealment of material fact". The order cannot, either on predicated basis or as to supportive substance, be declared to be clearly erroneous, and it is accordingly entitled to be affirmed.

The permit attacked had been issued in 1958 to a partnership trading as Humes Distributing Co. and represented by the application to consist of L. E. White (37½% interest), M. Donahue (12½% interest), and William L. Talbot, Administrator of Thomas F. Talbot Estate (50% interest) as members.

The charge made in the annulment proceeding was that the application had misrepresented and concealed material fact, by which the permit had been procured, in that it "falsely stated that the Thomas F. Talbot Estate held a 50% interest in the business", whereas the fact was that this interest had been purchased and was held by Ralph T. Peterson; and further in that Peterson "was not disclosed in the application as a partner in the business * * *".

Humes Distributing Co. had begun operation originally under a permit issued to a partnership consisting of George E. Humes and Thomas F. Talbot, with each having a 50% interest in the business. On Talbot's death in 1953, a new partnership permit was issued in favor of Humes and Talbot's son as administrator of his estate. The estate was desirous of getting out of the liquor business, and in 1954 the administrator entered into an agreement for purchase by Ralph T. Peterson of the estate's interest in the partnership. Humes and Peterson made application for a new permit, with final action being taken by the Secretary of the Treasury thereon in 1955, denying the application. In the language of the Hearing Examiner's findings and decision here, this denial was made "on the record of Peterson as a law violator", or as put, in paraphrase of § 204(a) (2) (B), by the Director, Alcohol and Tobacco Tax Division, in his review of the Hearing Examiner's decision, "on the grounds that a partnership including Peterson would not be likely to maintain operations in conformity with Federal law".

The business of Humes Distributing Co. thereafter continued to be operated under the 1953 permit issued to Humes and the administrator of the Talbot es-

tate until 1958, when Humes sold his 50% interest to White and Donahue, and they, together with the administrator of the estate, made application for and were issued the permit which is here involved. Apparently nothing occurred to focus any attention on the operation of the business until 1960, when White, Donahue and Peterson made application for a new permit in their names as partners, on the basis of Peterson having at that time again become purchaser of the Talbot estate's interest. Purportedly because of the denial which had been made as to Peterson in 1955, the Alcohol and Tobacco Tax Division decided to make an investigation into the source of his funds or financing in relation to his alleged 1960 purchase.

After it became apparent that a hearing would have to be undergone under § 204(b) as to the application, White, Donahue, and Peterson, as previously noted, made withdrawal of it. The Assistant Regional Commissioner thereafter continued with this annulment proceeding as to the 1958 permit, which had been initiated by him upon the ground, indicated above, that Peterson was at that time [and had been ever since the purchase agreement made in 1954] the actual owner of the 50% interest represented in the application as held by the Talbot estate.

The evidence in the record, as has been stated, afforded a substantial probative basis on consideration of it in its whole for the Hearing Examiner initially, and the Director on administrative appeal, to find and hold that the sale made by the Talbot estate to Peterson in 1954 had not been cancelled, but had been allowed to remain in effect and been carried out, so that Peterson and not the Talbot estate had from 1954 on been owner, beneficiary and participant in the business on the basis of this 50% interest.

We shall not repeat all the evidentiary details of testimony, documents, memoranda, admissions, acts, and circumstances set out in the Hearing Examiner's Findings and Decision. There were elements, of course, which in separation were capable of opposing implications and inferences. But contextually in the whole situation, they clearly were capable of being interpreted and given probative effect as the Hearing Examiner did. Indeed, although it is not necessary for us to go further than to hold that on the record as a whole "(t)he finding of the Secretary as to the facts * * * [is] supported by substantial evidence", § 204(h), and so cannot be declared to be clearly erroneous, it may be added that not only is the evidence to support the Secretary's decision substantial, but it also impresses as representing the clear weight in the situation.

A few aspects may be mentioned indicatively. It was undisputed that Peterson stayed on at Humes Distributing Co. after the 1954 application was denied. There was some testimony [neither White, nor Donahue, nor Peterson, however, at all took the witness stand] that Peterson's status was merely a beer-truck salesman down to the time of the filing of the 1960 application. But when White and Donahue bought Humes' interest in 1958 and added to the assets of Humes Distributing Co. those of another liquor business which they up to that time had been conducting, it was Peterson who made payment to them, with his personal check, for 50% of the value of this augmentation. And in the month after the permit here involved was issued, it was Peterson who joined with White and Donahue as represented partners in the execution of an application to Miller Brewing Company for a beer distributorship in Humes Distributing Co., as well as in an application for a ninety-day credit on cooperage, with the applications being accepted on this basis.

Further, in 1959, Peterson executed a promissory note and a chattel mortgage to a local bank as obligations of Humes Distributing Co. Also, the evidence contains some checks of Humes Distributing Co. drawn by Peterson and honored in regular course against the firm's account, with no attempt here to establish that

this was conventional authority in beer salesmen under Humes Distributing Co. business practices. Again, continuingly from 1955 on, funds from a 50% share of the profits of the business were shown by notations and entries which had been made by the administrator of the Talbot estate to have been credited by him on Peterson's 1954 purchase agreement.

It is true that the funds so treated came into the administrator's hands as checks of Humes Distributing Co. payable to the order of the estate. But not all of the checks for profits distributed on the 50% interest were thus issued to the administrator. Some were made payable directly to Peterson, and, also, of the checks made payable to the estate, some were endorsed over by the administrator to Peterson. Others were endorsed and deposited by the administrator, with part of the proceeds being credited to the estate's bank account and the rest being credited to Peterson's personal account in the same bank.

These constitute only a part of the probative aspects of the situation. It is not necessary to discuss the interpretations which petitioners sought to have made of these incidents, such as their contention that the payment by Peterson to White and Donahue for 50% of the value of the assets which the latter added to Humes Distributing Co. was made by him as an accommodation to and on behalf of the estate.

Viewing all of the elements together and evaluating them in the context of the whole, the Hearing Examiner was warranted, as we have stated, in concluding and finding that the sale transaction entered into between the estate and Peterson in 1954 was continued in effect; that Peterson at that time became and remained the owner of the estate's previous 50% interest in the business; that on the basis thereof he held the proprietary right to, and received in incidence thereto the economic benefits of, such 50% interest, in the form of cash paid to him or credited upon his contract; that further he did not just have the status of a truck-driver salesman but participated in the management and control of the business and had exercised authority equivalent to that of a general partner; and that as to his alleged purchase of the estate's interest in 1960, "there was actually no sale at that time and * * * Peterson merely openly assumed what had been his all of the time".

Thus, the Secretary was legally entitled to hold that misrepresentation and concealment had been made in the 1958 application as to the proprietary situation of the 50% interest in the business; that this was of fact-matter material in a consideration of the granting or denying of a permit under § 204(a) (2); and that with the permit having thus been improperly procured, it was entitled to be annulled under § 204(e) (3).

There is indication in the record that the parties had been conversationally led to believe after the 1955 denial that, if Peterson waited for a period of five years and during that time had "nothing against him", he would be eligible to submit and receive consideration on another application for a permit. It will be noted that the application which White, Donahue and Peterson filed in 1960 was made five years after the 1955 denial. Presumably, the parties thought that under these circumstances and within this contemplation there could be no harm done in letting the relationships created by the contract stand, if the estate's previous status was nominally recognized during this five-year period. But however harmless it may have seemed to the parties, the representation in the 1958 application that the estate was the owner of the 50% partnership interest and the concealment that this interest belonged proprietarily to Peterson were matters which under § 204(e) (3) caused the obtainment of the permit on this basis to be subject to annulment as the Secretary has engaged in doing.

Enough has been said to dispose of this review proceeding. Individual answer to the arguments made is not necessary. Some of them are matters from the banks and not the channel of the legal stream involved. The others have

dissolution in the implication and effect of what has been set out.

▮ Thus, the Secretary's annulment requires no consideration in relation to whether he could or could not properly have made denial of the 1958 permit if Peterson instead of the estate had been shown by the application to be the owner of the 50% interest. Congress expressed itself as concerned in the enactment of the Federal Alcohol Administration Act, 49 Stat. 977, 27 U.S.C.A. § 201, et seq., following the evils of the prohibition era, that the door should not be "left open for highly-financed gangs of criminals and racketeers to enter into the business of liquor production and distribution", and that the administration of the Act would be able "to exclude from the industries persons who would be likely to violate the provisions of the bill and other Federal or State laws". H.R.Rep. No. 1542, 74th Cong. 1st Sess. 3–8. See also Pinecourt v. Palmer, 190 F.2d 390, 393 (3 Cir., 1951); Seaway Beverages, Inc. v. Dillon, 115 U.S.App.D.C. 321, 319 F.2d 722, 725 (1963).

▮ Inherent in the accomplishment of these ends obviously would be the necessity of having disclosure made of the identity of those who wanted to go into or take over such a business. The making of such identification would have materiality as a matter of law, and any misrepresentation or concealment as to the persons so going into or taking over a liquor business would, regardless of their character, be matter per se "of material fact" in relation to the permit provisions of § 204. Cf. Middleborough Liquor & Wine Co. v. Berkshire, 77 U.S.App.D.C. 88, 133 F.2d 39, 41 (1942).

We shall only take occasion to add that there clearly is no substance in the argument of petitioners that the expression of the Director upon administrative review of the Hearing Examiner's decision left the order of annulment without any legal basis to sustain it. The Hearing Examiner had made findings that "Peterson was a partner when the 1958 application was signed" and also that "Peterson exercised authority equivalent to that of a general partner in the management and control of the new company in all of its affairs". The Director in making affirmance of the Hearing Examiner's order expressed the belief that the evidence may not have been sufficient "to establish the existence of a formal partnership", but added that "the evidence makes it manifestly clear that Peterson did, in fact, possess such authority and control in the operation of the business which would normally be exercised by one who was a partner", and that he therefore "found no reason to disturb the finding of the Examiner that Peterson's exercise of authority in the management and control of the business was equivalent to that of a general partner".

Petitioners argue that the effect of this was to take Peterson out of the case as a partner and that the Secretary's charge of misrepresentation and concealment thus was left without basis.

The refinement made by the Director and by petitioners in their argument amounts primarily to a matter of tweedle-dum and tweedle-dee in the situation. The pivotal question was whether the estate or Peterson was the owner of the 50% proprietary interest in Humes Distributing Co. at the time the 1958 application was made. Proof that "a formal partnership" had been entered into through articles of association, etc. could, of course, serve as a factor of indication. But so also, without this formal aspect, could the elements of authority and control which were exercised by Peterson in the business, and all absence thereof on the part of the administrator of the estate, provide probative contribution on who had the proprietary interest. The point here is that the evidence in all its aspects—not as a mere question of whether papers of formal partnership existed, nor as a factor alone of what authority and control Peterson had exercised, but in relation to all the other probative elements of the situation—entitled it to be found that it was Peterson and not the administrator of the

64

estate to whom the 50% proprietary interest belonged.

In concluding, we have given consideration to all of petitioners' contentions and find in them nothing that entitles reversal to be made of the Secretary's order.

Affirmed.