**OWINGS MILLS DISTILLERY, Inc., v. HELVERING, Com'r of Internal Revenue, et al.**

No. 4868.

Circuit Court of Appeals, Fourth Circuit.

Dec. 22, 1941.

Supplemental Opinion Jan. 28, 1942.

Samuel Polonsky and Robert R. Carman, both of Baltimore, Md. (Carman, Tucker & Anderson and Harold J. Wolfinger, all of Baltimore, Md., on the brief), for petitioner.

Arthur A. Alexander and Wilber Stammler, Sp. Assts. to Atty. Gen. (Donald W. Brown, Sp. Atty., Department of Justice, of Washington, D. C., and Thurman Arnold, Asst. Atty. Gen., on the brief), for respondents.

Before PARKER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

DOBIE, Circuit Judge.

We adopt as fair and accurate the statement of this case which appears in the brief of the Government:

"This is an appeal from an Order dated July 25, 1941, by the District Supervisor in charge of the Baltimore, Maryland, office of the Alcohol Tax Unit, Fifth District, Bureau of Internal Revenue, Department of the Treasury. By this order, permits Nos. D–219, BD–219, and PD–4325, previously issued to the Owings Mills Distillery, Inc., Petitioner herein, were revoked and applications by Petitioner for new permits were denied.

"The facts leading up to the above-mentioned order of July 25, 1941, are not in dispute. On June 3, 1940, Petitioner and its former president and then principal stockholder, Jacob J. Lansburgh, together with his son, Morris S. Lansburgh, were convicted of violating the Federal liquor laws. One month later on July 3, 1940, the 95,415 shares of Owings Mills stock owned by Jacob Lansburgh and his family and Morton Zerdin were sold to James H. Pollack and Benjamin Lerner and others. As a result of this transaction, those officials and stockholders of Petitioner who had been convicted, together with Petitioner, of violating the Federal liquor laws, namely, Jacob J. Lansburgh and Morris S. Lansburgh, passed from the picture and thereafter had no interest in Petitioner. By this sale and subsequent transactions Pollack acquired a voting power in Petitioner of 61,447 shares, and Lerner, a voting power of 53,525 shares.

"As a result of the conviction of the Petitioner, its permits were revoked. Applications were accordingly made for new permits. At the time of these applications and at the time of the order of July 25, 1941, the principal stockholders of Petitioner were Pollack and Lerner who, with the support of the 15,000 shares owned by Samuel Polonsky and 10,000 shares owned by one Lipstein, were able to control the corporate elections. At the time of the conviction of Petitioner and the Lansburghs in June 1940, Pollack and Lerner owned stock in Petitioner, but they were not principal stockholders, nor were they officials or directors."

Section 4(a) of the Federal Alcohol Administration Act of August 29, 1935 (c. 814, 45 Stat. 978), 27 U.S.C.A. § 204(a), the statute involved herein, reads as follows:

"§ 204. Permits

"(a) *Who entitled thereto.* The following persons shall, on application therefor, be entitled to a basic permit:

"(1) Any person who, on May 25, 1935, held a basic permit as distiller, rectifier, wine producer, or importer issued by an agency of the Federal Government.

"(2) Any other person unless the Administrator finds (A) that such person (or in case of a corporation, any of its officers, directors, or principal stockholders) has, within five years prior to date of application, been convicted of a felony under Federal or State law or has, within three years prior to date of application, been convicted of a misdemeanor under any Federal law relating to liquor, including the taxation thereof; or (B) that such person is, by reason of his business experience, financial standing, or trade connections, not likely to commence operations within a reasonable period or to maintain such operations in conformity with Federal law; or (C) that the operations proposed to be conducted by such person are in violation of the law of the State in which they are to be conducted."

The sole question before this Court is whether or not a denial of petitioner's applications under Title 27, Section 204(a) (2) (A) or (B), was proper upon the basis of the Findings of the District Supervisor.

■ We think the denial of the permit here was proper, under Title 27, Section 204(a) (2) (A). As the word "person" is used in this part of the statute, it includes a corporate petitioner, here the Owings Mills Distillery, Inc. And we think, too, that the parenthetical phrase "(or in case of a corporation, any of its officers, directors or principal stockholders)" was intended not to restrict the meaning of the word "person" but rather to include also within its prohibition, officers, directors and principal stockholders of a corporation who had personally been convicted of the crimes set out in the statute. Any other holding would make it palpably easy for a corporation to violate the law and then to have its permit continued, or a new permit granted by the obvious expedient of having a convicted personal offender transfer his stock in a corporation to a business associate, and the corporation might then be continued on its nefarious course, under the same illegal policies, though under supposedly new management. It would be a strange interpretation of the statute to hold that the statute was not designed to prevent such an evil. See Monarch Distributing Co. v. Alexander, 7 Cir., 119 F.2d 953.

■ We also believe that the order of the District Supervisor was proper under Title 27, Section 204(a) (2) (B). We might give to this clause the restricted meaning contained in the dissenting opinion of Judge Hutcheson in the case of Atlanta Beer Distributing Co. v. Alexander, 5 Cir., 93 F.2d 11, certiorari denied 303 U.S. 644, 58 S.Ct. 645, 82 L.Ed. 1106. We might even overlook the seamy police records of Pol-

lack and Lerner. Pollack, incidentally, appears on the Baltimore police blotter fifty-four times, with sixteen convictions, and has been four times charged with violation of Federal liquor laws, though there were no convictions in any of these four cases. Lerner has three times been in trouble for liquor violations, with one conviction.

 We cannot, however, overlook the substantial evidence of investigators McLean, Spiess and Richardson, in support of the charge that Pollack and Lerner attempted to bribe these investigators, threatened them with bodily harm and also threatened to use political influence against the investigators if they did not refrain from doing their obvious duty in enforcing the Federal liquor laws against Pollack and Lerner, and some of their unsavory associates. We cannot agree with the contention of petitioner's counsel that in determining whether or not a permit is proper under Title 27, Section 204(a) (2) (B), the District Supervisor can consider only formal convictions of crimes. Certainly, if Pollack and Lerner had been on trial before a Federal court for their attempts to bribe the investigators, accompanied by the alleged threats, the presiding judge would not have been warranted in directing a verdict for the defendants on the ground that there was not sufficient evidence to go to the jury.

In Atlanta Beer Distributing Co. v. Alexander, 5 Cir., 93 F.2d 11, 12, a case strikingly similar to the instant case, it was said: "If supported by substantial evidence, we are conclusively bound by the Administrator's findings of fact, and must affirm his order, provided he did not proceed upon a mistake of law, did not refuse to hear relevant evidence, and did not act arbitrarily or capriciously to the prejudice of the applicant." See also Arrow Distilleries v. Alexander, 7 Cir., 109 F.2d 397, 403, 406; and compare the opinion of Mr. Justice Sanford in Ma-King Products Co. v. Blair, 271 U.S. 479, 46 S. Ct. 544, 70 L.Ed. 1046 (National Prohibition Act).

We might add that even a brief study of the history and purpose of the statute in question, particularly of the reports and discussions when the instant statute was before Congress, clearly convinces us that the statute was passed to prevent the issuance of just such permits as the permit which is here sought by the petitioner.

Therefore, the petition should be denied and the order of the District Supervisor should be affirmed and approved.

Affirmed.

### Supplemental Opinion.

PER CURIAM.

A petition filed by counsel for the petitioner in this case calls attention to the fact that the opinion of the Court heretofore filed refers to criminal prosecutions instituted against Pollack and Lerner and criminal conduct on their part disclosed by the record without giving the dates of such prosecutions and criminal conduct. These dates were not given because it was deemed immaterial to the decision of the questions before the Court that the dates be set forth. Inasmuch as request is made that the dates be given, however, it is but fair to say that the criminal prosecutions against Pollack were instituted between 1921 and 1934 and those against Lerner between 1922 and 1927. The threats and attempts to bribe referred to in the opinion are shown by the record to have occurred in the years 1931 to 1933.