**UNITED STATES v. RENEE ICE CREAM CO. et al.**

No. 9132.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 3, 1947.

Decided March 5, 1947.

George R. Sommer, of Newark, N. J., for appellants.

Joseph B. Schwartz, of Newark, N. J., (Edgar H. Rossbach, U. S. Atty., of Newark, N. J., on the brief), for appellee.

Before BIGGS, GOODRICH, and Mc-LAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

The defendants were convicted of violation of War Food Order No. 8, Part 1401, Section 1401.31, paragraph (b) (1)[1] promulgated pursuant to Title III of the Second War Powers Act, 1942.[2] The information charging violation contained fourteen counts. The jury found a verdict of guilty as to the corporate defendant and as to individual defendant Mary Starovic on counts two, three and nine; a verdict of guilty as to the individual defendant Hannah M. Levous on count nine only. All the defendants appeal. In view of this verdict our attention is limited to the questions involved in the three counts upon which the jury found against the defendants.

The various counts were based upon a charge of over-utilization of milk solids for the particular months charged in each count. Count two covers April 1943, count three involves June 1943, and count nine has to do with March 1944.

The defendants all allege error in the admission of the testimony of one Seitz, who was an auditor employed by the Government and who had made an extensive examination of the corporate defend-

---

[1] "(b) *Restrictions on production of frozen dairy foods and mix.* (1) No processor may, during any allocation period specified by the Director pursuant hereto, utilize in the production of frozen dairy foods or mix more than 65 per centum of the total milk solids used by the respective processor in the production of such products, respectively, during the corresponding portion of the base period. The milk solids used in frozen dairy foods or mix manufactured for, delivered to, and for the account of an agency specified in or pursuant to paragraph (c) hereof shall be excluded from the amount of milk solids to which the aforesaid 65 per centum is applicable." 8 Fed.Reg. 954 (1943).

[2] 56 Stat. 176 at pages 178, 179, Act March 27, 1942, 50 U.S.C.A.Appendix, § 633, sec. 2(a) (2, 5).

ant's books. They say that Seitz was permitted to testify as to the conclusions based upon what defendants call hearsay and, likewise, was permitted to draw conclusions on assumptions made by him. We think there is no merit in this contention. In United States v. Michener, 3 Cir. 1945, 152 F.2d 880, 883, we said that auditors who made detailed inspection of a corporation's books and records could testify in summary form as to what was contained in the voluminous documents. The books of the defendant were in evidence. Likewise, those of other concerns which had had dealings with defendants were in evidence, from which alleged facts concerning the purchase of milk products by the defendants were sought to be established. In other words, the jury had before it the basic material on which the auditor's testimony was founded. Under these circumstances there was no error in permitting him to testify as he did.[3]

■ The serious question in the case is whether the Government's testimony is sufficient to sustain the conviction against one or all of the defendants. Defendants saved this point by proper motion at the close of the Government's case and again at the conclusion of all the testimony. Even without that we should be compelled to examine the point under Rule 52(b), Federal Rules of Criminal Procedure.[4]

The case presented was about like this: Corporate defendant was and is a manufacturer of ice cream. Its books for the months in question before us, and for the months involved in the other counts as well, showed the purchase of given quantities of milk products. The corporation's reports to the Government, required under war regulations, showed the manufacture of certain quantities of ice cream products for the same month. During all of this time the amount of ice cream products which a manufacturer could lawfully make was based upon a quota derived from a base period from December 1, 1941 to November 30, 1942. In every case the records

of the corporate defendant showed the manufacture of less ice cream products than it would have been entitled to make under War Food Order No. 8. If that was all there was to the story, obviously there would be no case against the corporate defendant or anybody else.

But the Government says, however, that there is more to the story. The Government says the defendant bought plastic cream, which purchase does not appear on defendant's books at all. It says, further, that the defendant bought butter and, on one occasion, bought butter under the pretense of buying cocoanut oil which was not a rationed product, but for which 150,000 ration points accompanied the payment and the ration point payment was the amount required for a butter purchase in the amount the Government claims. It appears that the defendant and all other manufacturers were required to furnish an inventory of the milk products on hand at the end of each month. Some of these are in evidence.

Now we get to the three months in question involving the three counts on which there were convictions. We take the counts in order.

■ A. Count two, April 1943. For this month there was evidence given by one Constans, who is a partner in the Standard Butter and Egg Company, of a sale to Renee on April 2, of 7,363 pounds of butter for $3,791.95. Standard's books also show payment by check of the same date. In this same month the books likewise show, from the same witness, evidence of the purchase of 3,402 pounds of butter on April 5, priced at $1,752.03, and paid for April 5.

The Renee Ice Cream Company's books do not show either of these purchases or payments, although there is testimony from officials of the Company that everything which they bought was recorded in their books.

We think that the testimony upon this point is sufficient to allow the jury to find

---

[3] United States v. White, 2 Cir., 1941, 124 F.2d 181, at 186, Judge Learned Hand states it is permissible to allow an expert to testify without need of a hypothetical question being presented if

"* * * at some stage and in some way it shall appear that the witness is basing his opinion only upon evidence in the case, * * *."

[4] 18 U.S.C.A., following section 687.

the purchase by and the delivery to Renee in April 1943, of these amounts of butter, and to support all legitimate inferences to be drawn from the fact of such payments. It is not that the defendants are "bound" by what is shown on the books of a stranger. The point is that the conflict of testimony as to whether the Renee Company did get the butter, which the Government claims, is resolved by the jury's verdict. The point concerning what amount of butter fat is represented by such purchase is discussed under count three.

B. Count three, June 1943. In this month, also, testimony from the witness, Constans, shows on June 16 the sale of butter, at $.46 a pound, for $6,549.48. Standard's books show that 113,904 ration points were required for this sale. Constans testified that 112,480 ration points accompanied payment and that "the balance" of the ration points was received later on. Two cancelled checks of Renee, dated June 14 and June 20 respectively, each for $3,274.74 are in evidence. In Standard's ledger they are entered as received on June 17, and June 19. Renee's books do not record this purchase. But Renee did produce a sales slip from Standard showing the sale to Renee of cocoanut fat billed at $.23 a pound, and bearing a notation "Points 112,480". It was shown, also, in evidence, that sales of cocoanut fat did not require ration points.

In other words, there was conflicting evidence here. Renee claimed this purchase and sale was of cocoanut fat. The Government claimed, through the evidence of Constans and books of Standard, that the sale was of butter. Here, too the conflict in the testimony was for the jury.

■ How much milk fat, a milk solid under Order No. 8, was involved in this butter purchase, assuming it was made? There was testimony on that point from the witness, Seitz, who estimated it at 83% of the poundage. This conclusion he reached by an inspection of the reports turned in to the Government by the Renee Ice Cream Company over several months. These re-

ports show that the proportion of butter fat which the Company, itself, assigned to its admitted butter purchases was 83%. It was not improper, we think, for the witness to testify as to this percentage, based upon the evidence given by the defendant's own reports.

C. Count nine, March 1944. Here we have several items and here, again, none of them appear on Renee's books.

(a) The first is March 7, a purchase from a seller named Barad-Shaff of 3,900 pounds of plastic cream at a price of $2,-249.13 and paid for, according to Barad-Shaff's books, on March 9. The evidence also shows the payment by Barad-Shaff of a bill of a trucking concern for delivery, on March 8, to Renee of weights which correspond with this claimed plastic cream sale.

(b) A sale by Okin Sales Company of 9,425 pounds of butter on March 8 amounting to $4,076.31 and payment of 150,000 [5] ration points accompanying the sale. The Okin Sales Company's ledger shows payments aggregating this amount on March 29, April 7, and April 12. The Okin Sales Company's books show the sale as one of butter.

Here, again, is testimony on which the jury could have found the sale and delivery to Renee of these amounts of milk products, not accounted for on its books of March 1944.

■■ There is no doubt in our minds that the testimony is sufficient to show concealed purchases of milk solids by defendant corporation for the period of the three counts on which a verdict of guilty was found. How close does this come to show illegal overutilization of milk products for those months? There was testimony, again from the witness Seitz, that the amount Renee admitted to having used in manufacture and the amount thus bought surreptitiously, if used in the month purchased, would show a very considerable over-run by the corporate defendant of the permissible quota.

---

[5] Testimony of Government witness reveals 150,000 ration points, (App. to Appellants' Brief, p. 135a) but Government Exhibit G-16 shows 150,800 points were required by the sale.

The critical point now becomes whether the Government has shown the overutilization for the particular months involved in the counts for which the verdict of guilty was returned. There is testimony from employees of Renee that they sold nothing but ice cream products and that they used all the supplies bought in manufacture. That is enough, obviously, to support a finding that Renee used, some time or other, all this material which the jury could find they had purchased and not accounted for. But it is not enough to find it was used over some specific period. We are faced here with the fact that of the total number of counts brought against these defendants the jury returned a verdict of not guilty in all but three, excepting the one in which the court dismissed for lack of evidence. So to support the conviction there must be some kind of testimony which either directly or by inference supports the finding that overutilization was for the particular month in question. For some months involved in the counts we would have some help. The defendant was required to file, and did file, reports of inventories showing unused material on hand at the end of a monthly period.

These reports are in evidence and were included in one batch as Exhibit G-4. G-4 is a certificate from the United States Department of Agriculture, signed and sealed by its Associate Solicitor giving the list of such inventories, with copies of them. The three months involved in the counts on which a conviction was had have no corresponding report. The result is that we are left without any information as to how much material Renee had on hand at the end of each one of the months. Did it use up in ice cream manufacture all the extra material which the jury might have found it purchased surreptitiously? The testimony is that Renee used all its purchases in ice cream manufacture. But eventual use will not support a conviction here. This is a prosecution for overutilization in particular months and those months are named. In order to sustain a conviction there must be, of course, evidence from which a jury could find that the overutilization took place in that month. We do not find a syllable of testimony, or anything in any exhibit, to give a basis for such a conclusion.[6] The Government's case, therefore, is like a field fenced on three sides, but left open at the fourth. This Company and its employees may well have concealed purchases and, for all we know, may have used the subject matter of these purchases in overutilization of milk products. But when they overutilized, if they did, there is nothing in the record to show.

It is quite clear that if the corporate defendant cannot be held, that the individuals cannot either. There is no evidence concerning them which is not also applicable to the corporation. The conclusion we have reached is that the judgment must be re-

---

[6] Even the Government's main witness, Seitz, was of no assistance on this point. The following are examples of his testimony under cross-examination:

"Q. And you are assuming that that much butter was delivered to them and used by them in order to make a determination that they used more than they were allowed under their quota, are you not? A. No, I am not. They have already stated in the hearing which they attended that everything they bought went into the production of ice cream.

"Q. Did they say it was used in the month they bought it? A. No." (App. to Appellants' Brief pp. 52a, 53a.)

"Q. Their statement was all merchandise which they purchased went into the manufacture or was in stock. Is that right? A. No, they didn't say that. All the dairy products which they purchased went into the manufacture of ice cream.

"Q. But they didn't say what month it went into the manufacture. A. No." (App. to Appellants' Brief, p. 76a.)

Along this line there is also testimony from Mary Starovic, Production Manager for the Company, in answer to the question: "Was all merchandise purchased by the company used in the month it was purchased?" The answer was "No, Sir. Sometimes we had merchandise we stored for a year or a year and a half. I know I have stored butter for two years." (App. to Appellants' Brief p. 221a.) We do not rely on this statement because after verdict for the prosecution the question is whether there is enough testimony to support this case, not whether there is opposing testimony which might lead to a different conclusion. But we think it interesting to note that the point was made by Miss Starovic and then seemed to have been lost sight of.

versed and the case remanded to the District Court with directions to enter a judgment of acquittal under Rule 29(a) of Federal Rules of Criminal Procedure, relative to the Motion for Acquittal.