**UNITED STATES v. PINCOURT.**

No. 9416.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 8, 1948.

Decided April 9, 1948.

John E. Toolan, of Perth Amboy, N. J., Linton M. Collins and Bingham, Collins, Porter & Kistler, all of Washington, D. C., for appellant.

Edgar H. Rossbach, U. S. Atty., of Newark, N. J. (Samuel Cohen, Atty. in Charge, Alcohol Tax Unit, of Newark N. J., on the brief), for appellee.

Before MARIS, McLAUGHLIN and KALODNER, Circuit Judge.

McLAUGHLIN, Circuit Judge.

This appellant was indicted and tried twice apparently on the assumption that the original price regulation which is alleged to have been violated and which applied to "sales" of the particular distilled spirits involved also included "deliveries" thereof.[1] It was after the appellant's conviction as a result of the second trial and after this appeal had been taken that the situation was discovered. It is urged, among other grounds, as reversible error.

Appellant, with six others, was indicted for conspiracy to sell and deliver bottled domestic distilled spirits in excess of the maximum prices established by Maximum Price Regulation 445, Article III as amended, under the Emergency Price Control Act of 1942 as amended, 56 Stat. 23 et seq., 50 U.S.C.A.Appendix, § 901 et seq. Appellant is admittedly a processor of distilled spirits. On January 6, 1944 Amendment 9 to Maximum Price Regulation 445 became effective. The purposes of Article III thereof, as stated in Section 3.1, were "(a) Generally. (1) Article III establishes maximum prices for *sales* of packaged domestic distilled spirits by processors to any purchaser." (Emphasis added). Section 3.7 as it was in its original form on January 6, 1944 read, "Dates on which this article shall apply. This article shall apply to all *sales* or *offers to sell* of items of packaged domestic distilled spirits by a processor on and after January 6, 1944." (Emphasis added).

The sale of the liquor was concluded in December 1943 at which time the purchase price was paid. The jury was instructed as a matter of law by the trial judge that prior to January 6, 1944 "there could not have been either a violation of the Emergency Price Control Act or a violation of the Criminal Code; there could not have been a conspiracy to violate a law which, in fact, had no existence." This instruction was given "because prior to January 6, 1944 there was no regulation fixing the ceiling price for domestic distilled spirits of the type in question in this state." The court then told the jury that the burden was upon the government to show that the conspiracy "continued to a date subsequent to January 6, 1944 and that overt acts in furtherance of

---

[1] Our decision on the first appeal in this matter which contains a recital of the facts is reported at 159 F.2d 917.

it were committed subsequent to January 6, 1944." The only proof of overt acts after the effective date of the regulation was the delivery of the liquor in February of 1944 with the court instructing counsel for the appellant that, in his argument for direction of verdict, "You can assume in your argument that the only fact is delivery in February."[2]

The court in denying the defense motion for direction of verdict said: "Here, not only is there not proof of any abandonment of the conspiracy by the persons who entered into it in October and November, but the proof is that despite the law, despite the regulation, and *in spite of the prohibition against not only sale but delivery,—* and the cases incidentally distinguish the use of the two terms as used in the statute— *the delivery was likewise in violation of the regulation,* because if the proof is to be believed, and we must believe it for the purposes of this motion, the delivery was likewise at a price in excess of that fixed by the pertinent regulation." (Emphasis added).

During the period when the liquor was delivered Article III remained unchanged and applied through Section 3.7 to all sales or offers to sell of packaged domestic distilled spirits. On August 1, 1944 the word "deliveries" was expressly excluded by 3.7. Amendment 17 to Section 3.7 issued and effective that date provided: "17. Section 3.7 is amended by adding the clause 'And provided further, That an amendment to this article shall not apply to any deliveries made prior to the effective date of such amendment.'"

Finally by Amendment 23 issued March 15, 1945 effective March 20, 1945 (10 F.R. 2879) Section 3.7 was made applicable to "deliveries." That amendment reads:

"27. Section 3.7 of Article III is revoked and a new Section 3.7 is substituted therefor to read as follows:

"Section 3.7. Dates on which this article shall apply. This article shall apply to all sales, offers to sell and deliveries:

"(a) On and after January 6, 1944, with respect to processors' sales of packaged distilled spirits."[3]

The government conceding the absence of "deliveries" from Section 3.7 asserts that by other provisions of the price regulations the word "sell" used in the indictment includes "deliver." It refers to Section 7.12 (f) of Maximum Price Regulation 445 (8 F.R. 11, 161) which states: "(f) *Unless the context otherwise requires,* definitions contained in Sec. 1499.20(c) (h) (i) (j) (k) (m) (o) (p) (r) and (s) of the General Maximum Price Regulation shall apply to the same or corresponding terms used herein, and the definitions contained in Section 302 of the Emergency Price Control Act of 1942 shall apply to other terms used herein." (Emphasis added)

It then refers to Section 1499.20(r) (7 F.R. 3156) which defined "sell", saying, " 'Sell' includes sell, supply, dispose, barter, exchange, lease, transfer and deliver, and contracts and offers to do any of the foregoing. * * *" It also stresses that according to Section 302(a) of the Emergency Price Control Act "The term 'sale' includes sales, dispositions, exchanges, leases, and other transfers, and contracts and offers to do any of the foregoing." From this language it is urged that "even if those deliveries were not overt acts in effecting a conspiracy" they "were illegal as sales."

This argument by the government must fall. The word "sell" as contained in the original Section 3.7 was not synonymous with "deliver", because the context clearly "otherwise requires" as provided in the exception contained in Section 7.12(f). This is shown by the development of Section 3.7 and by comparison between it and related sections. For example, Section 1.11 of

---

[2] The testimony shows that delivery of the liquor was completed in March and April 1944, but this is of no importance to the result.

[3] We are not here concerned with any retroactive civil legal effect that may have been intended by having this 1945 amendment embrace 1944 transactions. There is no indication that any attempt was being made to enact an ex post facto criminal law. The last delivery of spirits was not later than April 1944, nearly a year prior to the passage of the above regulation making such delivery illegal.

Article I which has to do with imported distilled spirits and wine, states that the Article "shall apply to all sales or offers to sell * * *." This section was amended by adding Amendment 17 on August 1, 1944, just as Amendment 17 was added to Section 3.7. Section 2.7 specifically says that Article II "shall apply to all sales, and offers to sell and deliveries of the commodities specified therein made on and after October 7, 1943". Other sections in M.P.R. 445 show the same sort of careful differentiation between sales and deliveries with both words or their equivalent used where intended.[4] But, most convincingly, when Amendment 23 went into force on March 15, 1945 it completely revoked the original Section 3.7 which applied only to sales and offers to sell and inserted a new section which included not only sales and offers to sell but also "deliveries".

The situation presented is altogether distinguishable from cases where the conspiracy was hatched before, with the overt acts occurring after, the enactment of illegality. United States v. Randall et al., 2 Cir., 140 F.2d 70, 71; Butler, et al. v. United States, 7 Cir., 138 F.2d 977, 981; Bryant v. United States, 5 Cir., 257 F. 378.

It is plain from the record that appellant was tried for conspiracy to sell and deliver the liquor above the ceiling price authorized by Article III. Under the proofs that ceiling price was not fixed until January 6, 1944 when that regulation went into force and after the sale had been consummated. The only thing that happened following January 6, 1944 was the delivery of the liquor beginning in February which extended at the latest to some time in April of 1944. During that period "delivery" was not in the pertinent regulation; it was in contemporaneous regulations where called for; it was deliberately added to Regulation 3.7 in 1945. What happened here goes far beyond the facts in Kraus v. United States, 327 U.S. 614, 66 S.Ct. 705, 90 L.Ed. 894, where the Supreme Court speaking of the Maximum Price Regulations said at page 621 of 327 U.S., page 707 of 66 S.Ct., 90 L.Ed. 894, " * * * the Administrator's provisions must be explicit and unambiguous in order to sustain a criminal prosecution; they must adequately inform those who are subject to their terms what conduct will be considered evasive so as to bring the criminal penalties of the Act into operation. * * * The dividing line between unlawful evasion and lawful action cannot be left to conjecture. The elements of evasive conduct should be so clearly expressed by the Administrator that the ordinary person can know in advance how to avoid an unlawful course of action." And at page 622 of 327 U.S., page 708 of 66 S.Ct., 90 L.Ed. 894: "A prosecutor in framing an indictment, a court in interpreting the Administrator's regulations or a jury in judging guilt cannot supply that which the Administrator failed to do by expressed word or fair implication."

Under the facts it must be accepted that throughout the critical period Regulation 3.7 did not include deliveries. It follows that the alleged conspiracy to "sell and deliver" read on the facts upon which the jury, as instructed by the court, necessarily based appellant's conviction, did not charge a crime then existent within the Emergency Price Control Act. In the circumstances there could be no such conspiracy to commit an offense against the United States.

Appellant strongly argues other points for reversal, but, in the view we take of the matter discussion of them is unnecessary. The judgment of the district court will be reversed and the cause will be remanded with instructions that a judgment of acquittal be entered.

---

[4] Compare Section 4.5 which now states that Articles IV shall apply to all sales, offers to sell and deliveries on or after December 21, 1944. Originally Section 4.12 provided that Article IV applied to all sales, offers to sell and deliveries of certain wine for which maximum prices were established and provided therein for sales made on and after but not before October 22, 1943, by any seller subject thereto, except, among other things, that the article should not apply to any deliveries made on or before October 31, 1943 pursuant to sale or contract to sell made prior to October 1, 1943. Section 5.11 states that Article V applies to all sales and offers to sell. Amendment 17 also affects this section. Section 6.5 simply specifies sale, delivery or offer to sell or to deliver.