## UNITED STATES v. ASENDIO.

### No. 9626.

United States Court of Appeals
Third Circuit.

Argued June 22, 1948.

Decided Dec. 9, 1948.

Leslie Pinckney Hill, 2d, of Philadelphia, Pa. (Austin Norris and A. Allan Goodman, both of Philadelphia, Pa., on the brief), for appellant.

Gerald A. Gleeson, of Philadelphia, Pa. (John A. Geisz, Asst. U. S. Atty., of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

Indicted and found guilty of a violation of Section 2 of the Narcotic Drugs Import and Export Act, 21 U.S.C.A. § 174, defendant has taken the instant appeal. The questions presented for our decision involve the

scope of the Fourth Amendment to the Constitution of the United States.

The facts, stipulated for the purpose of this appeal, are substantially as follows: One Billie Holliday, an entertainer, passed a small package wrapped in white tissue paper to defendant, on one of the busier street corners of downtown Philadelphia. This occurred at 11:30 P. M. on May 15, 1947, in front of a theater at which Holliday had just completed a professional engagement. Neither Holliday nor defendant was aware that one Roder, an agent of the Federal Bureau of Narcotics, observed the transfer of the package. Directly thereafter, Holliday, her piano accompanist named Tucker, and defendant entered an automobile and rode to a hotel where the three were staying. Roder and two other federal agents followed them.

Upon arriving at the hotel, the federal agents secured the services of two uniformed Philadelphia policemen. These five officials proceeded to the room which defendant and the accompanist were occupying. The door of the room was open. Defendant and Tucker were packing travelling bags. Identifying themselves, the federal agents asked whether they could search the room. Defendant and Tucker told them they "could 'go ahead.' "

The search lasted several minutes. Roder found, under one of the beds, the identical package which Holliday had given defendant on the pavement about a half hour previously. The package contained capsules of heroin hydrochloride, two hypodermic needles, and other items, all wrapped in a silk stocking. At first denying all knowledge of the package, defendant later admitted that he had been in possession of it and had thrown it under the bed. He further asserted that he did not know the contents of the package until but a few minutes before the federal agents and city policemen arrived. The stipulation does not include information as to when defendant was placed under arrest.

At the time these events happened, defendant had been in Holliday's employ, as road manager, for about three weeks. He admitted knowing that she had been addicted to drugs, but maintained that he thought she had been cured as a result of treatment she had taken.

Defendant waived trial by jury. He made no motion to suppress the evidence seized by the federal agents as a result of the aforementioned search. He moved for a judgment of acquittal both at the close of the testimony presented by the government and after his defense rested; but neither of these motions referred to the failure of the government agents to obtain a search warrant before they entered his hotel room. Denying both motions, the trial judge found defendant guilty.

About three weeks thereafter, defendant moved for a new trial or judgment of acquittal. For the first time, he asserted that he "was illegally arrested as the Federal agents who made the arrest invaded his private room at the Attucks Hotel without a search or seizure warrant as is required by law." Five days later, denying this motion as well, the trial judge sentenced defendant to imprisonment for one year and one day.

The stipulation of facts concludes with the statement that "there was considerable [sic] more testimony adduced both by the Government and the defendant bearing on the guilt or innocence of the defendant with regard to the question of the defendant's guilty knowledge of the contents of the package, but counsel do not consider them essential to the questions raised upon this appeal."

Within the past eleven months, the Supreme Court of the United States has handed down three decisions of prime importance in interpreting the Fourth Amendment. In United States v. Di Re, 1948, 332 U.S. 581, 68 S.Ct. 222, 229, the Court, inter alia, held that submission to arrest and acceptance of a command to go to the police station is not a basis for inferring probable cause, and reiterated the principle that "a search is not to be made legal by what it turns up." In Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 369, a case partially involving the same statute as that under which the instant defendant was convicted, the Court stressed that "when the right of privacy must reasonably yield to the right of search is, as a rule, to

be decided by a judicial officer, not by a policeman or Government enforcement agent," and that "an officer gaining access to private living quarters under color of his office and of the law which he personifies must then have some valid basis in law for the intrusion." Finally, in Trupiano v. United States, 1948, 334 U.S. 699, 68 S.Ct. 1229, 1232, although holding that a warrant of arrest is unnecessary where a felony plainly occurs before the eyes of an officer of the law at a place where he is lawfully present, the Court nevertheless granted a motion to exclude and suppress contraband which was physically near the person properly arrested and which was seized without a warrant. Again in the Trupiano case the Court emphasized that the Fourth Amendment requires "adherence to judicial processes wherever possible," and pointed out that there was an abundance of time during which a search warrant could have been secured. The Court said, "Rather the test is the apparent need for summary seizure, a test which clearly is not satisfied by the facts before us." 334 U.S. at page 708, 68 S.Ct. at page 1234. Even the dissenting justices in the Trupiano case accented the fact that there had been a lawful entry and a valid arrest.

■ Applying these principles to the facts at bar, we cannot escape the conclusion that the search and seizure here involved fell within the ban of the Fourth Amendment. It is true that subsequent events indicated that Roder had witnessed the commission of an offense, when he saw Holliday hand the package to defendant; but it is equally true that the act which he observed was not, in and of itself, of a kind which would obviously give even a trained eye more than a suspicion that an offense was being committed. We think it is doubtful whether an appropriate judicial officer, informed that a former addict had been seen to hand a small package wrapped in white paper to her employee in front of a downtown theater, would have considered the circumstances sufficiently suspicious to warrant the issuance of a search warrant.

We shall, however, assume without so deciding that what Roder observed did constitute "reasonable cause" for the securing of a warrant. Instead of doing so, he chose to follow defendant to the hotel and institute a search without a warrant. We deem it plain that this course of action was not "adherence to judicial processes wherever possible." We have been given no reason to justify Roder's dispensing with the orderly procedure prescribed for searches and seizures. Even if Roder had known in advance that defendant was going to the hotel to pack the travelling bags, we have no intimation that defendant was preparing for flight from justice. Holliday's engagement at the theater had ended, and the preparation for departure was perfectly consistent with what one would expect of the road manager of a figure in the entertainment world. Moreover, it nowhere appears that the lapse of time necessary to obtain a warrant would have permitted defendant to depart before Roder could take effective action. The facts unmistakably indicate that the federal agents either deliberately or through inadvertence chose to by-pass the constitutional requirement.

On the oral argument before us, the government conceded, as indeed the Di Re and Johnson cases indicate, that defendant's "go ahead" cannot be construed as consent to the search. The federal agents and city policemen were a show of authority and force to which defendant merely submitted. As in the Johnson case, the arrest of defendant could be justified only by the search, and the search by the arrest. We can find no valid basis in law for the unwarranted intrusion by the officials.

■ Clearly, then, a motion by defendant to suppress the evidence gained by the illegal search and seizure would have had to be granted. Defendant made no such motion; nor did he call attention to the circumstances of the search and seizure until after he had been adjudged guilty and was to be sentenced. The government contends that defendant's failure to raise the issue amounted to a waiver of that defense. We need not, and do not, decide whether this position would have force if defendant had first asserted the defense in this appeal. It is sufficient to note that defendant did bring the matter to the attention of the district judge who was the trier of the facts, before

sentence was passed, and that the court below did have the opportunity to consider and dispose of the issue. We are reluctant to give a litigant two bites at the proverbial apple, so that he may first defend on the merits and later argue that evidence introduced without objection by him should nevertheless have been excluded by a court unaware of the faulty basis of that evidence. On the other hand, we should find it difficult to support the position that a basic constitutional right of defendant can be denied because his counsel failed to object before or at the introduction of the colorable evidence. In United States v. Ward, etc., 3 Cir., 1948, 168 F.2d 226, 228, we deemed reversal necessary because the trial judge inferred to the jury that failure of an accused to testify could be considered together with testimony as to guilt, even though the accused did not assign that error as a basis for reversal; and in United States v. Pincourt, 3 Cir., 1948, 167 F.2d 831, we reversed a conviction upon a ground discovered after appeal had been taken. We conclude that the record shows plain error in admitting, albeit unwittingly, the testimony gained as a result of the illegal search and seizure. Under Rule 52 (b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., reversal is therefore necessary. See United States v. Renee Ice Cream Co., 3 Cir., 1947, 160 F.2d 353, 355.

The judgment will be reversed and the cause remanded for a new trial.

BIGGS, Chief Judge (concurring in part, dissenting in part).

According to the testimony of Narcotic Agent Roder when he and the other narcotic officers, accompanied by two uniformed policemen of the Philadelphia Police Force, arrived at the defendant's room in the Attucks Hotel they found the door open and a light burning. The defendant and Tucker were inside. The officers walked into the room and Agent Roder and the other narcotic agent showed their credentials to Asendio and Tucker. Roder then informed Asendio that he had reliable information that he [Asendio] and Billie Holliday were in possession of narcotic drugs. Asked if he used narcotic drugs, Asendio denied that he did. Roder further testified he asked Asendio's permission to make an examination of his arms. Asendio did not, to use the words of the transcript, "deny the examination," but took off his coat and rolled up his sleeves. Roder testified, "I did not find any marks from the hypodermic needle", on his arms. Roder stated that he then asked Asendio's permission to make a search of his room and person. Asendio replied: "Now wait a minute; will you please identify yourself again, who you are." Roder stated he showed Asendio his commission as a narcotic officer and his shield and that Asendio then said: "Well, that is satisfactory to me. Go ahead and make a search." The search and seizure immediately followed. The testimony of the other narcotic agent corroborated Roder.

The law is clear that the right guaranteed by the Fourth Amendment to the Constitution to the people against unreasonable searches and seizures is a privilege and immunity personal to the individual which may be waived by the individual's consent, if given voluntarily. See Davis v. United States, 328 U.S. 582, 593, 594, 66 S.Ct. 1256, 90 L.Ed. 1453; Ingram v. United States, 9 Cir., 113 F.2d 966; Grainger v. United States, 4 Cir., 158 F.2d 236; Grice v. United States, 4 Cir., 146 F.2d 849; In re Fried, 2 Cir., 161 F.2d 453, 1 A.L.R.2d 996; 47 Amer.Jur., Searches and Seizures, Section 71. Whether, in the case at bar, Asendio voluntarily consented to the search of his hotel room by the narcotic agents, thereby waiving his constitutional right, is a question of fact, which the court below, on remand, specifically should find under the circumstances of the instant case. See Rule 23(c), Federal Rules of Criminal Procedure. Cf. Davis v. United States, supra, 328 U.S. 582, at pages 587, 593, 66 S.Ct. 1256, 90 L.Ed. 1453; In re Fried, supra, 2 Cir., 161 F.2d 453, at page 457, 1 A.L.R.2d 996.

The majority opinion takes the view that Asendio's consent is not an issue. I think that this position is erroneous for, as indicated in the preceding paragraph, he could have waived his constitutional right.

I conclude that the judgment of the court below should be vacated and the cause remanded to the end that the trial court may

126

make the special finding referred to. A full-dress new trial is unnecessary. If the trial court finds that Asendio voluntarily consented to search by the narcotic agents, the court below could enter judgment against Asendio as before. If the court were to find that he had not voluntarily consented to the search it should enter judgment of acquittal.