**PINCOURT et al. v. PALMER, District Supervisor.**

**No. 10306.**

United States Court of Appeals
Third Circuit.

Argued April 3, 1951.

Decided July 23, 1951.

Thorn Lord, Trenton, N. J., for petitioner.

John J. Donnelly, Jr., Washington, D. C. (H. G. Morison, Wallace A. Russell, on the brief), for respondent.

Before BIGGS, Chief Judge, and MARIS and GOODRICH, Circuit Judges.

BIGGS, Chief Judge.

The petitioners, Arthur K. Pincourt and Dorothy Pincourt, trading as Royal Liquors Company, a partnership, filed an application with the defendant, the District Supervisor of the Fourth Supervisory District, Alcohol Tax Unit, for basic permits to rectify and sell distilled spirits at wholesale. Under the provisions of the Federal Alcohol Administration Act, 49 Stat. 977 et seq., 27 U.S.C.A. § 201 et seq., basic permits are required before rectification of distilled spirits or purchase of distilled spirits for resale at wholesale is permitted.

After consideration the District Supervisor of the Alcohol Tax Unit at Newark, New Jersey, gave notice of contemplated disapproval of the applications. Thereafter a hearing was held before an examiner.[1] At the hearing both the petitioners and the Alcohol Tax Unit were given an opportunity to present evidence but the petitioners offered none. The examiner made findings

I. Pursuant to the provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq.

of fact on the evidence offered by the Alcohol Tax Unit and recommended disapproval of the applications.

The following is a brief review of the background of petitioner Pincourt as revealed in the findings of the examiner. In 1933 Pincourt was president of Stuyvesant Distilling Corporation which was charged with thirteen violations of law including misbranding, the failure to keep proper records and failure to pay taxes. In 1934 he admitted these violations and promised future compliance. Subsequent inspections, however, revealed other and later violations of the law. Pincourt held no federal permits between 1934 and 1943. He admits that in 1943 he was engaged in black market activities in connection with the sale of apple brandy. In 1943 Pincourt was a stockholder and officer of Royal Liquors, Inc. and was interviewed by federal authorities in connection with a permit application of that corporation. He admits that he made false statements at that interview when questioned about the apple brandy transactions.

Later in 1943 Pincourt, his wife, and a third person were partners in an enterprise known as Royal Liquors Company. It is not clear whether this was a partnership or a corporation but it is clear that Pincourt was active in it. During the years 1943 through 1945 that partnership or corporation converted to its own use 838 cases of liquor which had been delivered to it in barrels by customers for bottling. Pincourt admits that in connection with many of these conversions customers were issued false copies of official government reports.

Pincourt was tried in a United States Court for an alleged conspiracy to violate OPA regulations. He was finally acquitted. See United States v. Pincourt, 3 Cir., 159 F.2d 917 and Id., 3 Cir., 167 F.2d 831. But he now admits that he did not hesitate to take the witness stand and give false testimony.

The District Supervisor made an order approving and adopting the findings and conclusions of the examiner and disapproving the applications for permits. The petitioners sought review here.

█ The petitioners' position is based on the wording of the Federal Alcohol Administration Act which they contend precludes the consideration of the facts to which we have referred in connection with the applications. The relevant provisions of the Act are set out below.[2]

█ Section 204 provides in substance that an application for a basic permit shall be granted unless it is found that the applicant is " * * * by reason of his business experience, financial standing, or trade connections, not likely * * * to main-

---

2. 49 Stat. 978, 27 U.S.C.A. § 204, provides:
"(a) The following persons shall, on application therefor, be entitled to a basic permit:
"(1) Any person who, on May 25, 1935, held a basic permit as distiller, rectifier, wine producer, or importer issued by an agency of the Federal Government.
"(2) Any other person unless the Secretary of the Treasury finds (A) that such person (or in case of a corporation, any of its officers, directors, or principal stockholders) has, within five years prior to date of application, been convicted of a felony under Federal or State law or has, within three years prior to date of application, been convicted of a misdemeanor under any Federal law relating to liquor, including the taxation thereof; or (B) that such person is, by reason of his business experience, financial standing, or trade connections, not likely to commence operations within a reasonable period or to maintain such operations in

conformity with Federal law; or (C) that the operations proposed to be conducted by such person are in violation of the law of the State in which they are to be conducted."
By Treasury Orders and Regulations the authority of the Secretary of the Treasury to grant and deny permits has been delegated to the district supervisors in charge of the supervisory districts of the Alcohol Tax Unit of the Bureau of Internal Revenue. Treasury Order No. 30, June 13, 1940; Treasury Decision 5550, approved March 5, 1947, 26 CFR 171.2, 27 CFR 1.22; Levers v. Anderson, 1945, 326 U.S. 219, 66 S.Ct. 72, 90 L.Ed. 26. Petitioners are authorized by law to appeal directly to this court without first applying to the District Supervisor for reconsideration or appealing to the Commissioner of Internal Revenue for review. 26 CFR 171.2, 182.255, 182.257; Levers v. Anderson, supra.

tain such operations in conformity with Federal law * * *." We find no basis for the petitioners' claim that the facts found by the examiner are irrelevant. The wording of the Act is broad enough to authorize exactly the type of investigation which was made and we deem most of the findings made by the examiner and adopted by the Supervisor to be within the purview of the statute. In the consideration of a license application the past experience and conduct of the applicant is an important consideration. Greater Kampeska Radio Corp. v. F. C. C., 71 U.S.App.D.C. 117, 108 F.2d 5, 7; Levers v. Berkshire, 10 Cir., 159 F.2d 689, 694. A criminal record is a pertinent element in attempting to weigh the probable future conduct of the applicant. Atlanta Beer Distributing Co. v. Alexander, 5 Cir., 93 F.2d 11, 13. In this connection the absence of an actual conviction does not preclude the consideration of criminal conduct. Owings Mills Distillery, Inc., v. Helvering, 4 Cir., 124 F.2d 379, 381.

■ The petitioners seek to minimize the importance of some of the facts. They imply that in 1933, after the repeal of Prohibition, and in 1943, during OPA days, federal laws were violated frequently. This has been true since the beginning of the Republic. The petitioners point out that they were granted permits in 1943 even though the earlier violations were on record. This is to say that if the United States errs once, it must err again. The Pincourts assert that the cases of liquor stolen from customers represented only a very small percent of the cases actually bottled by them. No comment need be made on this cynicism. The Pincourts also contend that some items of their improper conduct were not violations of federal law and, therefore, are not relevant here.

We find these arguments unconvincing. The statute presents no problem in construction. The language quoted in the next to the last paragraph, upon which the Supervisor properly relied, is designed to prevent the issuance of licenses to persons like the petitioners who are very unlikely to maintain their operations in conformity with federal law. The trade connections of one of the petitioners, Arthur Pincourt,

were demonstrably unsavory. He admits making false statements and the conversion of his clients' goods. Such a person can scarcely be deemed to have good financial standing. It would appear also that the Pincourts' experience in the field of legitimate business was comparatively slight. The rectification and sale of distilled spirits are fruitful sources of unlawful income to the racketeer. It was clearly the intent of Congress to permit only persons of financial rectitude and of known integrity and business ability to be licensed. The petitioners do not fall into the designated category.

The decision of the Supervisor will be affirmed.